UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TRUSTEES OF THE IBEW-NECA     §
SOUTHWESTERN HEALTH AND     §
BENEFIT FUND, et al.,     §
    §
    Plaintiffs,     §
    §
v.     §     CIVIL ACTION NO. 3:23-CV-0224-B
    §
ROCKEY ELECTRIC, INC.,     §
    §
    Defendant.     §

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Default Judgment (Doc. 22) by Trustees of the IBEW-NECA Southwestern Health and Benefit Fund ("Health Benefits Plan"), Trustees of the NECA-IBEW Local Union No. 584 Pension Plan ("Pension Plan"), Trustees of the NECA-IBEW Local Union No. 584 Profit Sharing Plan ("Profit Sharing Plan"), Trustees of the Tulsa Electrical Joint Apprenticeship and Training Committee ("Training Committee Plan"), and Trustees of the National Electrical Benefit Fund ("NEBF Plan") (collectively "Plaintiffs"). For the following reasons, Plaintiffs' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.

## BACKGROUND

This is an employee benefits case. Plaintiffs, as representatives of certain employee benefits plans, are suing Rockey Electric, Inc. ("Rockey") because Rockey failed to make contributions to those plans under the parties' collective bargaining agreement ("CBA").

Plaintiffs are administrators and fiduciaries of multiemployer pension and employee benefit plans. Doc. 14, Am. Compl. ¶¶ 4-8, 11. Defendant Rockey Electric, Inc. ("Rockey") is an electrical contracting company that employs individuals who receive benefits under those plans. *See id.* ¶¶ 9-10. In July 2020, Rockey executed a "Letter of Assent," which bound Rockey to the terms of a CBA between the International Brotherhood of Electrical Workers Local Union 584 ("Local Union 584") and the Eastern Oklahoma Chapter of the National Electrical Contractors Association (the "Chapter"). *Id.* ¶ 10. By assenting to the CBA's terms, Rockey agreed to pay contributions to specific benefits plans (including those administered by Plaintiffs) in accordance with each plan's respective trust agreement. *Id.* Those plans would utilize Rockey's contributions to supply various employee benefits to Rockey's employees. *Id.* Along with benefit plan contributions, Rockey agreed to pay union dues to Local Union 584 and contribute to an additional administrative fund run by the Chapter, known as the "RAM Fund." *Id.* ¶ 22-23; *see* Doc. 14-1, Am. Compl. Ex. 1, at 39. For administrative convenience, the CBA required participating employers like Rockey to pay all contributions in a lump sum directly to the RAM Fund, which would then distribute those contributions to participating plans. Doc. 14-1, Am. Compl. Ex. 1, at 39. However, if an employer defaulted on any of its contribution obligations, "[r]esponsibility for the enforcement . . . and the collection [of such contributions] remain[ed] with each individual Fund respectively." *Id.* at 39-40.

Plaintiffs originally filed this action on January 30, 2023, alleging Rockey "breached its agreements with Plaintiffs by failing and refusing to submit to an exit audit" and—depending on the outcome of the audit—may owe certain withheld contributions, along with liquidated damages and interest, to Plaintiffs. Doc. 1, Compl. ¶¶ 13-14. However, in May 2023, Plaintiffs, through a third-party auditor, were able to audit Rockey's wage and payroll records without court intervention. *See*

*generally* Doc. 14-7, Am. Compl. Ex. 7. The audit uncovered various deficiencies in Rockey's contributions between August 2020 and May 2021. *Id.* at 1-2. Specifically, the auditors found that Rockey owed $12,098.13 in CBA-mandated plan contributions and union dues, along with liquidated damages and interest. *See id.* at 2.

In April 2024, based on Rockey's now-exposed deficiencies, Plaintiffs filed an amended complaint. *See generally* Doc. 14, Am. Compl. Plaintiffs allege that, by failing to make the requisite contributions, Rockey violated the CBA, Plaintiffs' respective trust agreements, and the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶ 1. In June 2024, Plaintiffs served Rockey with the Amended Complaint. *See* Doc. 17, Aff. Service, 1. Rockey failed to file an answer or otherwise respond. In October 2024, the Clerk of Court entered default. *See* Doc. 20, Entry Default, 1. Then, in August 2025, Plaintiffs filed their Motion for Default Judgment. *See generally* Doc. 22, Mot. Plaintiffs seek unpaid employer contributions, interest, liquidated damages, audit fees, attorney's fees, and costs. *Id.* at 2.

The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, upon motion of the plaintiff, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend against the relief sought. FED. R. CIV. P. 55(a), (b)(2). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnotes and citations omitted). A party is not entitled to a default judgment merely because

the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam) (citation omitted). Instead, "default judgment is committed to the discretion of the district court." *Chevron Intell. Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *2 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (Boyle, J.) (citation omitted). First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." (citations omitted)). "Third, courts determine what form of relief, if any, the plaintiff should receive." *Morelia Mexican*, 126 F. Supp. 3d at 813 (citation omitted).

## III.

## ANALYSIS

The Court concludes that a default judgment is procedurally warranted and that there is sufficient basis for judgment in the pleadings. The Court awards $9,822.50 in unpaid contributions and $3,400 in audit fees. The Court does not award interest on unpaid contributions, liquidated damages, attorney's fees, or court costs at this time.

A.      *An Entry of Default Judgment Is Procedurally Warranted.*

To determine whether default judgment is procedurally warranted, the Court considers a list of factors set forth by the Fifth Circuit, known as the *Lindsey* factors:

> [1] whether material issues of fact are at issue; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893 (citation omitted).

After applying the six *Lindsey* factors to Plaintiffs' Motion, the Court determines that default judgment is procedurally warranted. First, Rockey has not filed any responsive pleading, so there are no material facts in dispute. *See id.*; *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."). Second, Rockey's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Plaintiffs'] interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893) (other citation omitted). Third, the grounds for default are clearly established because Rockey has had nearly two years to respond to the Amended Complaint and five months to respond to the present Motion or provide an explanation for its delay. *Cf. Ann Best Elite Temporaries, Inc. v. KNR Grp., Inc.*, 216 F.3d 1080 (5th Cir. 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to indicate that Rockey's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Plaintiffs seek only the relief the law provides them, and "the Court is aware of no applicable defense." *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-

CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (Lynn, J.) (citation omitted). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Rockey. *Lindsey*, 161 F.3d at 893 (quoting FED. R. CIV. P. 55(c)). Therefore, the Court concludes that default judgment is procedurally warranted.

B.    *There is a Sufficient Basis for Judgment in the Pleadings.*

Next, the Court reviews the pleadings to determine whether Plaintiffs established a viable claim for relief. *See id.*; *Nishimatsu Constr.*, 515 F.2d at 1206. In doing this, the Court assumes that, due to its default, Rockey admits all well-pleaded facts in the Amended Complaint. *Nishimatsu Constr.*, 515 F.2d at 1206. But a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

In conducting this portion of the analysis, "the Fifth Circuit looks to the [Federal Rule of Civil Procedure 8] case law for guidance." *Morales v. Rausch Grp. & Assocs., LLC*, No. 3:19-CV-2850-B, 2020 WL 6583023, at *3 (N.D. Tex. Nov. 10, 2020) (Boyle, J.). "Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal quotation marks and citation omitted). But "the pleading must present 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

ERISA mandates that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained

agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. If an employer defaults on its contribution obligations, the multiemployer plan is permitted to bring a civil action under ERISA to enforce it. *See* 29 U.S.C. § 1132(a)(3). Because Congress intended § 1132 to allow plan trustees to expeditiously recover delinquent contributions, the law recognizes very few circumstances justifying an employer's noncompliance. *See La. Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir. 1998) (recognizing the "only three defenses to a delinquency action" as being illegality, fraud, or dissolution of the union). None of those circumstances are present here.

Plaintiffs allege Rockey failed to pay various contributions and dues required by the CBA between August 2020 and May 2021, totaling $12,098.13. *See* Doc. 14, Am. Compl. ¶ 14; Doc. 22, Mot., 2. Viewing these assertions as admitted, Plaintiffs have stated a valid cause of action under ERISA.[1]

C.    *Plaintiffs are Entitled to Unpaid Contributions and Audit Fees But Are Not Entitled to Prejudgment Interest, Liquidated Damages, Attorney Fees, or Court Costs At This Time.*

Having found sufficient basis for default judgment, the Court must consider any damages to which Plaintiffs are entitled. Normally, courts should not award damages without a hearing, unless detailed affidavits establish the necessary facts. *Morelia Mexican*, 126 F. Supp. 3d at 814 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). But a hearing is unnecessary if the court

---

[1] While Plaintiffs allege both an ERISA violation and breach of contract, the Court does not consider Plaintiffs' breach of contract claim separately because the factual basis and recovery is the same under either cause of action.

can determine the amount of damages with mathematical calculation, by referencing the pleadings and supporting documents. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citations omitted).

Plaintiffs seek unpaid employer contributions totaling $12,098.13, interest on unpaid contributions compounded monthly at a rate of 1.5%, liquidated damages at a rate of 15% of total unpaid contributions, audit fees totaling $3,400, attorney's fees totaling $18,091.54, and costs totaling $644.16. Doc. 22, Mot., 2. Section 1132(g)(2) applies to actions involving delinquent contributions and allows plans to recover (1) unpaid contributions, (2) interest on those unpaid contributions, (3) the greater of liquidated damages as provided under the plan itself (not to exceed a 20% rate) or an amount equal to the interest on the unpaid contributions, (4) reasonable attorney's fees and costs, and (5) other relief the court deems appropriate. "[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan" if the plan specifies an interest rate. § 1132(g)(2). The Court reviews each damages component separately.

1.  Unpaid Contributions

Plaintiffs seek unpaid employer contributions and dues totaling $12,098.13. Doc. 22, Mot., 2. As determined by the audit, those unpaid contributions and dues are owed to ten separate entities in the following respective amounts:

- Pension Plan: $3,146.85

- Profit Sharing Plan (annuity plan): $808.94

- Training Committee Plan: $340.20

- NEBF Plan: $606.71

- Health Benefits Plan: $4,919.80

- National Labor Cooperative Council: $8.51

- Labor Management Compliance Council: $42.53

- RAM Fund: $1,011.17

- National Electrical Contractor Association: $606.71

- Local Union 548 Dues: $606.71

Doc. 14-7, Am. Compl. Ex. 7, at 2; Doc. 22-2, Aff. LaFave ¶ 6.

As the Court noted in a prior order, only five of the above entities are before the Court as named plaintiffs. *See* Doc. 23, Order, 1. However, Plaintiffs seek unpaid contributions withheld from several other plans and parties not before the Court: (1) $8.51 for the National Labor Cooperative Council, (2) $42.73 for the Labor Management Compliance Council, (3) $1,011.17 for the RAM Fund, (4) $606.71 for the National Electrical Contractors Association, and (5) $606.71 in union dues to Local Union 584. Plaintiffs allege that the CBA authorizes them to collect all contributions and overdue contributions, including those owed to the non-party plans and entities. *See* Doc. 14, Am. Compl. ¶¶ 22-23. But because the Court does not take conclusions of law as admitted, *see Nishimatsu Constr.*, 515 F.2d at 1206, the Court requested supplemental briefing to identify Plaintiffs' authority, contractual or otherwise, to collect funds due to non-party entities. *See* Doc. 23, Order, 2.

In response, Plaintiffs filed supplemental briefing, in which they maintained their position that they can collect unpaid employer contributions on their own behalf, as well as on behalf of the non-party entities named above. Doc. 24, Suppl. Br. ¶ 10. As contractual support for their position, Plaintiffs refer to Section 6 of the CBA, which sets forth various employer-contribution requirements to designated employee benefit funds and describes the RAM Fund's role in distributing

contributions. *See id.* ¶¶ 6-9. In particular, Plaintiffs cite Section 6.07, claiming that this provision

"authoriz[es] Plaintiffs to pursue collection on behalf of each fund and [local unions]." *Id.* ¶ 9.

Section 6.07 does not contain such authority. In its entirety, Section 6.07(a) reads as follows:

The failure of an individual Employer to comply with the provisions of Sections 6.01 through 6.06 shall also constitute a breach of this Labor Agreement. As a remedy for such a violation, the *Labor-Management Committee and/or the Council on Industrial Relations for the Electrical Contracting Industry*, as the case may be, are empowered, at the request of the Union, to require an Employer to pay into the affected Joint Trust Funds established under this Agreement any delinquent contribution to such funds which have resulted from the violation.

Doc. 14-1, Am. Compl. Ex. 1, at 41 (emphasis added). Neither the "Labor-Management

Committee," nor the "Council on Industrial Relations for the Electrical Contracting Industry" is a

party to this case. And the Amended Complaint does not allege the involvement of either entity in

these proceedings. Accordingly, the Court fails to see how this provision provides Plaintiffs' assumed

authority.

Section 6.07(b) is likewise unhelpful and reads as follows:

If, as a result of violations of this Section, it is necessary for the Union and/or the Trustees of the Joint Trust Funds to institute court action *to enforce an award rendered in accordance with Subsection (a) above*, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or Fund Trustees, plus cost of the litigation which have resulted from the bringing of such court action.

*Id.* (emphasis added). While Section 6.07(b) mentions the "Trustees of the Joint Trust Funds," it

does so only to note that those trustees can obtain *fees and costs* in certain circumstances. *See id.* It

does not implicitly or explicitly permit any particular fund to recover unpaid contributions owed to

another. *See id.* Moreover, it applies solely to actions taken to enforce or defend "an award rendered

in accordance with Subsection (a) above"—a reference to actions taken by the Labor-Management

Committee or Council on Industrial Relations for the Electrical Contracting Industry. *See id.*

-10-

Plaintiffs do not allege they are enforcing an award rendered through such action, and, in any event, enforcing an award does not give each respective plan authority to collect for another. Thus, Section 6.07 of the CBA does not provide Plaintiffs' assumed authority to collect unpaid contributions owed to non-party entities.

Plaintiffs appear to also contend that because Rockey and other participating employers pay plan contributions in one "lump-sum" payment to the RAM Fund, Plaintiffs are correspondingly authorized to recover those unpaid distributions in a lump sum—including those earmarked for non-party entities. *See* Doc. 24, Suppl. Br. ¶¶ 4-8. However, the CBA contains no language providing such authority. In fact, the CBA explicitly notes in Section 6.05(c) that, while the RAM Fund receives payments meant for all benefit plans in the CBA, the RAM Fund "shall not be responsible for the enforcement and collection of payments required by the collective bargaining agreement." Doc. 14-1, Am. Compl. Ex. 1, at 39-40. Instead, "[r]esponsibility for the enforcement of these payments and the collection of all moneys due . . . shall remain with *each individual Fund respectively*." *Id.* (emphasis added). Thus, this argument is similarly unavailing.

Accordingly, Plaintiffs have a clear basis to recover unpaid contributions owed to the named-plaintiff plans but not to non-parties. Per a third-party audit of Rockey's employer contributions in the relevant period, Plaintiffs identified $9,822.50 in unpaid contributions owed to named-plaintiff plans: $3,146.85 owed to the Pension Plan, $808.94 owed to the Profit Sharing Plan (annuity plan), $340.20 owed to the Training Committee Plan, $606.71 owed to the NEBF Plan, and $4,919.80

owed to the Health Benefits Plan. *See* Doc. 14-7, Am. Compl. Ex. 7, at 2. The Court thus awards each Plaintiff its respective unpaid contributions.

   2.   Interest

ERISA allows plans to recover interest on unpaid contributions, "determined by using the rate provided under the plan" if it provides a rate. § 1132(g)(2). If the relevant plan does not provide a rate, Courts must generally apply a rate prescribed under 26 U.S.C. § 6621. *Id.* Plaintiffs ask the Court to apply an interest rate of 1.5%, compounded monthly (resulting in an effective annual rate of 19.56%). *See* Doc. 22, Mot., 2. But Plaintiffs do not identify any support for that rate in the CBA or in any plan's respective trust agreement.[2] In fact, Plaintiffs' supporting documentation adds further confusion because the audit report—attached to the Motion as Exhibit 1—reflects an entirely *different* interest rate in its calculations. *See* Doc. 22-1, Mot. Ex. 1, at 7 (reflecting a nominal annual rate of 18%).

Accordingly, the Court declines to award interest at this time. If Plaintiffs seek interest on the $9,822.50 in unpaid contribution damages awarded above, they must, within **7 days** of this Order, file a supplemental brief indicating the proper rate of interest to be applied and final amount of interest owed. Plaintiffs' supplemental brief must identify the particular contractual basis for their proposed rate. If there is no contractual basis for that rate, Plaintiffs must determine the proper rate under § 6621. Finally, Plaintiffs must propose a final calculation of interest due, taking into account

---

[2] The Court pointed out these same deficiencies in its prior Order denying Plaintiffs' first Motion for default judgment. *See* Doc. 12, Mem. Op. & Order, 10. While Plaintiffs now attach the CBA and each Plaintiff's respective benefit plan to the Amended Complaint, they again fail to identify any provision providing the interest rate sought.

the proper interest rate and the Court's determination to award $9,822.50 (not $12,098.13) in unpaid contributions.

### 3. Liquidated Damages

Under ERISA, a plaintiff can obtain liquidated damages in an amount provided by the plan itself (but not exceeding 20%) or equal to the interest on the unpaid contributions. § 1132(g)(2)(C). Courts are to award the greater of the two figures. *Id.* Plaintiffs seek liquidated damages at a rate of 15%. Doc. 22, Mot., 2. As with interest, Plaintiffs again do not provide the contractual basis for their 15% figure. And even with a contractual basis, the Court cannot determine "the greater of" contractual liquidated damages and interest because it does not know the correct amount of interest on the unpaid contributions. Accordingly, the Court declines to award liquidated damages at this time. If Plaintiffs continue to seek liquidated damages in this action, they are directed to file supplemental briefing within **7 days** of this Order both identifying a contractual basis for a 15% rate of liquidated damages (or another proper rate) and providing a final rate of interest on unpaid contributions per the Court's above specifications.

### 4. Audit Fees

Plaintiffs also seek an award of "audit fees"—costs incurred by Plaintiffs to audit Rockey's payroll records—totaling $3,400. *Id.* As a contractual basis for this request, Plaintiffs cite generally to their respective trust agreements. *See* Doc. 14, Am. Compl. ¶ 21. For instance, the Health Benefit Plan's trust agreement expressly provides for audit fees in the event of delinquent contributions. *See* Doc. 14-2, Am. Compl. Ex. 2, at 21. ERISA provides further support for an audit fee award, permitting the Court to award "other legal or equitable relief as the court deems appropriate."

§ 1132(g)(2)(E). As Rockey only submitted to an audit *after* Plaintiffs instituted this action, the Court finds the award appropriate. Accordingly, the Court awards Plaintiffs $3,400 in audit fees.

### 5. Attorney's Fees and Costs

ERISA also allows successful plaintiffs to recover reasonable attorney's fees and costs. *See* § 1132(g)(2)(D). "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). "The calculation of reasonable hours requires a determination of whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended." *Cardinal Servs., Inc. v. Omega Protein, Inc.*, No. 00-1909, 2007 WL 1343266, at *1 (W.D. La. May 7, 2007) (citation omitted). "Courts may exclude hours that are insufficiently documented and should not award attorney's fees unless the prevailing party presents sufficiently detailed records that the time expended and the need for services are clearly established." *Id.* (citing *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1991)).

Plaintiffs seek $18,091.54 in attorney's fees and $644.16 in costs. *See* Doc. 22, Mot., 2. In support, Plaintiffs submit the affidavit of their lead counsel, Douglas M. Selwyn. *See generally* Doc. 22-3, Selwyn Aff. Mr. Selwyn has 40 years of experience in his employee benefits law practice and has a billable rate of $443 per hour. *Id.* ¶ 6. Plaintiffs' other attorney seeking fees, Ashley L. Selwyn, has 12 years of experience in employee benefits law and has a billable rate of $343 per hour. *Id.* While Plaintiffs demonstrate the reasonableness of their counsel's rates, they do not properly address the reasonableness of the hours spent or even state how many hours they worked on this case. The

Court cannot properly evaluate "whether specific hours claimed were reasonably expended" without any indication of how many hours each attorney worked and what they accomplished during those hours. *See Cardinal Servs.*, 2007 WL 1343266, at *1.

Plaintiffs also fail to specify the source of the $644.16 in "costs of court" that they claim. *See* Doc. 22, Mot., 2. "A district court has discretion to deny all costs and expenses when the party seeking the costs has not provided an itemized breakdown of the costs incurred and reasons for their necessity." *Guity v. Lawton Env't Serv., LLC*, 50 F. Supp. 3d 760, 772 (E.D. La. 2014) (citing *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991)).

Accordingly, the Court declines to award attorney's fees and costs at this time. If Plaintiffs continue to seek attorney's fees and costs, they must file supplemental briefing within **7 days** of this Order, addressing the deficiencies identified above.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Default Judgment (Doc. 22). The Court:

- **GRANTS** Plaintiffs' request for unpaid employee benefit contributions in the amount of $3,146.85 to the Pension Plan, $808.94 to the Profit Sharing Plan (annuity plan), $340.20 to the Training Committee Plan, $606.71 to the NEBF Plan, and $4,919.80 to the Health Benefits Plan, totaling $9,822.50;

- **GRANTS** Plaintiffs' request for audit fees in the amount of $3,400;

- **DENIES** Plaintiffs' request for interest on unpaid contributions;

- **DENIES** Plaintiffs' request for liquidated damages; and

- **DENIES** Plaintiffs' request for attorney's fees and costs.

Plaintiffs have **7 days** from the date of this order to file supplemental briefing to address deficiencies in their requests for interest, liquidated damages, attorney's fees, and court costs. A final judgment will follow, but not before 8 days after the entry of this order.

SO ORDERED.

SIGNED: March 12, 2026.

_____
JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE